FILED
AUG 03 2004
LEONARD GREEN, Clerk

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-615

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 03-3455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MARY BETH AMANN, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| JOHN E. POTTER, Postmaster General, | ) SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellee. | ) |

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court. This notice is to be prominently displayed if this decision is reproduced.

Before: DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Mary Beth Amann brought suit in district court against her employer, the United States Postal Service, for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. Amann alleged that the Postal Service engaged in disability discrimination and retaliation by transferring her to night shift work at its Dalton Street facility in Cincinnati. The district court granted the Postal Service's motion for summary judgment, concluding that Amann was not disabled under the Rehabilitation Act and did not satisfy the elements of the prima facie case for a retaliation claim. On appeal, Amann challenges both of the district court's conclusions. For the following reasons, we affirm the judgment of the district court.

I.

Amann has been employed by the Postal Service since 1988. From 1988 until 1994, she worked as a mail processor at the air-conditioned Dalton Street mail processing plant on a Tour 1 shift, which lasted from 9:45p.m. to 7:15a.m. In 1994, Amann was diagnosed with these movement-

No. 03-3455
Amann v. Potter

limiting impairments: thoracic outlet syndrome, carpal tunnel syndrome in both wrists, chondromalacia patellae in both knees, fibromyalgia, and bone spurs in her heels. During that year, she was also diagnosed with a sleep disorder and a propensity for heat exhaustion. She then filed a workers' compensation claim, which was approved for Amann's work-related conditions of thoracic outlet syndrome, carpal tunnel syndrome, chondromalacia patellae, and bone spurs.

As a result of her work-related injuries, Amann was placed on "limited duty" work[1] as a modified mail processor on the Tour 1 shift at Dalton Street. Shortly thereafter, from April until August 1994, Amann worked a "detail" checking carriers' mail in the Covington, Kentucky postal facility on a Tour 2 shift, which lasted from 7:00a.m. until 2:30p.m. Following the completion of her detail in August 1994, Amann requested that she be assigned to a Tour 2 shift, and she provided a doctor's note stating that she needed to continue receiving the structured sleep allowed by the day shift. The Postal Service responded that the Tour 1 shift enabled Amann to receive structured sleep, and it denied her request. Amann returned to her job as a modified mail processor working the Tour 1 shift at the Dalton Street facility and continued in that position for nearly three years.

On July 1, 1997, Amann accepted the Postal Service's offer to transfer to the air-conditioned Cincinnati airport air mail facility ("AMF") on a day shift that lasted from 11a.m. until 7:30p.m. In October 1998, Amann was reassigned to work the same shift at the AMF annex. The portion of the annex where Amann worked was not air-conditioned. Amann subsequently requested that she be

---

[1] A limited duty work assignment is work designed to accommodate employees with work-related injuries. With the exception of a detail completed in 1994, Amann has only worked as a modified mail processor since being placed on limited duty work.

No. 03-3455
Amann v. Potter

transferred back to the main portion of the AMF because of her concerns regarding heat exhaustion. Because her position in the AMF was no longer in existence, Amann was instead transferred to her pre-AMF position: working the Tour 1 shift at the air-conditioned Dalton Street facility. Although she reported for work at the Dalton Street facility, on May 25, 1999, Amann requested sick-leave, citing stress. On June 4, 1999, the Postal Service gave Amann a new permanent job offer as a modified mail processor at the Dalton Street facility with an assigned shift of 10:30p.m. to 7:00a.m.

In response to her new permanent job offer, Amann wrote a letter requesting that she be placed back on the job offered to her on July 1, 1997 – working a day shift position in the air-conditioned AMF. Amann and a Postal Service plant manager then met for a mediation session in June 1999, which was ultimately unsuccessful. Amann filed an Equal Employment Opportunity complaint on August 2, 1999, in which she alleged that she was discriminated against by the Postal Service *inter alia* when the Postal Service reassigned her to the AMF annex and later to the Dalton Street facility on a Tour 1 shift. A hearing on the allegations presented in Amann's complaint was held in the spring of 2001. The Administrative Law Judge ("ALJ") who presided over Amann's hearing concluded that Amann was not disabled, as provided by the Rehabilitation Act, with respect to her heat exhaustion and sleep disorder conditions because Amann had not demonstrated that these conditions substantially limited one or more major life activities.[2] The ALJ also decided that Amann had failed to establish that she was denied reasonable accommodation as to these impairments.

---

[2] The ALJ did note that Amann was a qualified individual with a disability with respect to her impairments of thoracic outlet syndrome, carpal tunnel syndrome, chondromalacia patellae, and bone spurs but that the Postal Service had reasonably accommodated these impairments by providing Amann with the modified mail processor position.

*No. 03-3455*
*Amann v. Potter*

Amann then filed a complaint in the United States District Court for the Southern District of Ohio against the Postal Service for violating the Rehabilitation Act by failing to respond to her request for accommodation and for retaliating against her. The Postal Service filed a motion for summary judgment, which the court granted. Amann filed a timely notice of appeal of the district court's order.

Amann remained on sick leave with the Postal Service until June 2000, when she accepted a position at the Dalton Street facility on a Tour 3 shift, which lasts from 1:00p.m. until 10:30p.m. She is presently employed in that position by the Postal Service.

## II.

Amann appeals the grant of summary judgment for the Postal Service, claiming that the Postal Service engaged in disability discrimination against her when it failed to accommodate her request to be transferred from the Tour 1 (night) shift to a shift during the day. The Rehabilitation Act prohibits the United States Postal Service from discriminating against individuals by reason of their disability. 29 U.S.C. § 794(a). In order for a plaintiff to prevail on a claim of disability discrimination based on failure to accommodate, the plaintiff must show that: (1) she is an individual with a disability; (2) she is qualified for the position; (3) the agency was aware of her disability; (4) an accommodation was needed because a causal relationship existed between the plaintiff's disability and her request for accommodation; and (5) the agency did not provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

We review a grant of summary judgment *de novo*. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003). Summary judgment is appropriate where "the pleadings, depositions, answers

No. 03-3455
Amann v. Potter

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the grant of summary judgment by the district court, this court views "all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). When reviewing a disability discrimination claim under the Rehabilitation Act, we look to the standards provided by the Americans with Disabilities Act ("ADA"). *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 842 (6th Cir. 1996) ("By statute, the [ADA] standards apply in Rehabilitation Act cases alleging employment discrimination.") (citing 29 U.S.C. § 794(d)).

The district court found that Amann did not meet the first step of her prima facie case because she did not present evidence sufficient to establish that she was disabled under the Rehabilitation Act. In so doing, the district court examined each of Amann's proffered impairments: carpal tunnel syndrome, chondromalacia patellae, thoracic outlet syndrome, bone spurs, fibromyalgia, tendency for heat exhaustion, and a sleep disorder. The court decided that, when medication or other corrective measures were applied, Amann's impairments were not substantially limiting. The court further noted that the list of activities provided by Amann as affected by her impairments were not major life activities.

No. 03-3455
*Amann v. Potter*

For purposes of analyzing a disability discrimination claim, a "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[3] 42 U.S.C. § 12102(2) (ADA). The term "substantially limits" means

> [u]nable to perform a major life activity that the average person in the general population can perform; or *[s]ignificantly restricted* as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (ADA) (emphasis added). In considering whether an individual is substantially limited in a major life activity, the following factors are relevant:

> [1] The nature and severity of the impairment;
> [2] The duration or expected duration of the impairment; and
> [3] The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (ADA).

The parties do not dispute that Amann suffers from physical impairments. The question remaining is whether Amann is disabled because, as she asserts, her impairments substantially limit the major life activity of performing manual tasks. Amann argues that the district court erred by considering each of her impairments separately in determining whether she is disabled, instead of looking to the cumulative effect of her impairments. Moreover, she claims that the combination of her physical impairments – including primarily the aggravation of her fibromyalgia that results from not receiving sufficient sleep – makes difficult *inter alia* certain isolated tasks, including:

---

[3] The term "disability" also includes "a record of such an impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Amann has not asserted that she is disabled under either of these definitions.

*No. 03-3455*
*Amann v. Potter*

curling her hair, cleaning floors, carrying groceries in paper bags, folding blue jeans and towels, cutting fruit, stirring fudge, building rabbit cages, peeling more than five potatoes at a time, twisting off lids, hitting tennis balls with a racket, and cleaning some portions of a bathtub. Amann also notes that she takes a pain reliever, such as Tylenol or Advil, for achiness and that she is affected by weather. Based upon these claims, she asserts that the district court erred in finding her not disabled under the Rehabilitation Act.

For an individual to be disabled because of an impairment that substantially limits the performance of manual tasks, the "individual must have an impairment that *prevents or severely restricts* the individual from doing activities *that are of central importance to most people's daily lives.*" *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002) (emphasis added). In addition, the impact of the impairment must be permanent or long-term. *Id.* Therefore, having an impairment that limits the performance of some manual tasks does not necessarily constitute a disability. The Supreme Court has stressed this point, noting that it is not enough for an individual to produce medical evidence of an impairment. *Id.* Rather, the individual must also offer evidence "that the extent of the limitation caused by the impairment in terms of the individual's own experience is substantial." *Id.* (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) (quotation and alteration omitted)).

In two key respects Amann has failed to produce evidence that she is disabled because of her limitations in performing manual tasks. First, as the district court properly reasoned, many of the tasks cited by Amann – such as curling her hair, making fudge, playing tennis, and cleaning some portions of a bathtub – are not activities of central importance to daily life. Second, even

7

*No. 03-3455*
*Amann v. Potter*

assuming *arguendo* that this court could view the tasks described by Amann more broadly, as matters of cleaning or personal hygiene that may be considered "of central importance to most people's daily lives," Amann has failed to show that her impairments prevent or substantially restrict the performance of these tasks. Her claim that she has trouble performing some tasks, and that other tasks can cause pain, does not demonstrate that she is severely restricted in their performance as compared to how the average person in the general population would perform the same tasks. *See id.*; 29 C.F.R. § 1630.2(j)(1); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (noting that moderate difficulty or pain experienced while engaging in a major life activity does not constitute a disability under the ADA). Therefore, Amann has not demonstrated that she is disabled because of restrictions on her ability to perform manual tasks.

Besides interference in the performance of manual tasks, Amann also asserts that her impairments affect the following list of activities: sleeping (affected by her sleep disorder); walking, lifting, repetitive movement, stooping and bending (all affected by her fibromyalgia); lifting and carrying (affected by thoracic outlet syndrome); bending and lifting (affected by chondromalacia patellae). She also contends that she is "totally disabl[ed]" by heat exhaustion. Assuming that all the activities mentioned are major life activities, Amann still has not presented evidence that she is substantially limited in engaging in these activities. Amann has only named life activities purported to be affected by her impairments. As the Supreme Court has made clear, plaintiffs asserting that they are disabled must offer evidence "that the extent of the limitation in terms of their own experience . . . is substantial." *Kirkingburg*, 527 U.S. at 567; *see also Williams*, 534 U.S. at 198.

No. 03-3455
*Amann v. Potter*

Accordingly, we are in full agreement with the district court that Amann has not produced evidence from which a reasonable jury could determine that she is disabled under the Rehabilitation Act. Because she is not disabled, Amann's discrimination claim must fail.

### III.

Amann next asserts that the Postal Service retaliated against her May 1999 request to be transferred from the non-air conditioned AMF annex to the main section of the AMF, which was air-conditioned, by moving her to night shift work at the air-conditioned Dalton Street facility. For a plaintiff to establish a prima facie case of retaliation under the Rehabilitation Act, the plaintiff must show:

> 1) the plaintiff engaged in legally protected activity;
> 2) the defendant knew about the plaintiff's exercise of this right;
> 3) the defendant then took an employment action adverse to the plaintiff; and
> 4) the protected activity and the adverse employment action are causally connected.

*Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). The district court determined that Amann's retaliation claim failed because the Postal Service's transfer of Amann to night shift work was not an adverse employment action. On appeal, Amann asserts that work hour changes can be adverse employment actions.

We conclude that Amann has not met her burden of demonstrating that the transfer back to Dalton Street in response to her request for an air-conditioned work environment was an employment action that was adverse to her. *See Miller v. Peck-Hannaford & Briggs Co.*, No. 97-3558, 1998 WL 136225, at *1 (6th Cir. Mar. 16, 1998) (citing *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886-87 (6th Cir. 1996) for the proposition that "[a] mere shift transfer does not amount to an

9

No. 03-3455
*Amann v. Potter*

adverse employment action"); *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 800 (6th Cir. 2004) (en banc) (reaffirming definition of adverse employment action given in *Kocsis*); *cf. Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769-71 (5th Cir. 2001) (holding that a shift change, without more, is not an adverse employment action under the anti-retaliation provision of the Family and Medical Leave Act); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (In the Title VII context, an "[employer's] decision to change [an employee's] working hours certainly does not rise to the level of an adverse employment action."). Amann requested a transfer to an air-conditioned work facility because of heat exhaustion concerns. The Postal Service transferred her to an air-conditioned facility while maintaining her in the position of modified mail processor. Although this transfer did include a change of shift, Amann did not suffer an adverse employment action as a result of the Postal Service accommodating her request to work in an air-conditioned facility.

Assuming *arguendo* that Amann had made out her prima facie case of retaliation, the burden shifts to the Postal Service to articulate a legitimate, nondiscriminatory reason for transferring Amann back to Dalton Street. *Gribcheck*, 245 F.3d at 551. As previously discussed, the Postal Service has asserted that it moved Amann to Dalton Street to provide her with an air-conditioned working environment so as to accommodate her tendency to experience heat exhaustion. Therefore, the Postal Service has met its burden. After the defendant articulates a nondiscriminatory reason for taking the employment action against the plaintiff, "the plaintiff must answer the defendant's nondiscriminatory reason[] by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reason[] [is] pretextual." *Id.* at

No. 03-3455
*Amann v. Potter*

552. Such a showing is necessary because "the ultimate burden of persuasion never shift[s] from the plaintiff." *Id.* (quoting *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987)). Amann has wholly failed to meet this burden because she has presented no evidence that her transfer to the Dalton Street facility was for any reason other than because the Postal Service was accommodating her request to work in an air-conditioned environment. In sum, the record in this case simply does not permit the inference that the Postal Service transferred Amann to the Dalton Street facility in retaliation for engaging in protected activity.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.